IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW LOVETT, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CONNECT AMERICA.COM t/a CONNECTAMERICA | : | NO.  14-2596 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                              September 11, 2015

Plaintiffs in this this Fair Labor Standards Act ("FLSA") collective action have

asked the court to approve the settlement they reached with Defendant.  For the reasons

that follow, I will grant the motion and approve the settlement.

**I.      FACTUAL BACKGROUND**

Plaintiffs, current and former Senior Safety Consultants of Defendant, brought this

collective action on behalf of themselves and all others similarly situated, alleging

overtime and other compensation violations.  See Doc. 1 ¶¶ 14, 17-20, 22-24, 27-28;

Doc. 16 ¶¶ 20, 26-27, 36-38.[1]  Specifically, Plaintiffs complained that Defendant failed to

pay class members the applicable minimum wage in violation of section 206(a) and

overtime in violation of section 207(a)(1).  Doc. 1 ¶¶ 33-34, 41-42; Doc. 16 ¶¶ 37-38, 47-

48, 53, 56-63, 64-74.  Defendant disputed the class allegations and that it violated the

FLSA.  Doc. 17.

---

[1]There are a total of 54 Plaintiffs in the case (9 named and 45 opt in) out of a total
of 246 potential plaintiffs.  Notices of the action were sent to each of the 246 potential
plaintiffs.  See Doc. 89-1 at 2.  The primary job duty of the Senior Safety Consultants
was to "solicit sales of interactive (2-way) home medical emergency monitoring over the
telephone to consumers across the country."  Doc. 1 ¶ 15.

In the Complaint and Amended Complaint, Plaintiffs clearly intended to proceed with the case as a collective action.  See Doc. 1 ¶¶ 26-30; Doc. 16 ¶¶ 51-55.  The Third Circuit follows a two-step process to determine whether an action may proceed as a collective action under the FLSA.  Amadi v. Cardo Windows, Inc., 299 F.R.D. 68, 78 (D.N.J. 2014) (citing Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013); Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012)).  The first step or conditional certification is commonly called the notice stage and "is not really a certification, but 'the district court's exercise of [its] discretionary power to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under [the] FLSA.'"  Amadi, 299 F.R.D. at 78 (quoting Zavala, 691 F.3d at 536).  At the second stage, the court makes "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similar situated to the named plaintiff."  Id. (quoting Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011), rev'd on other grounds, __ U.S. __,  133 S.Ct. 1523, 1536 (Apr. 16, 2013)).

In this case, Judge Bartle originally set a certification discovery deadline of December 19, 2014.  Doc. 30.  Prior to that date, counsel negotiated a mutually acceptable collective action notice and process, and Judge Bartle approved the parties' stipulation regarding the notice and the appointment of a claims administrator.  See Docs. 31 & 34.  Thus, despite no formal order granting conditional certification, counsel complied with the notice stage, agreeing on a notice to be sent to the prospective opt-in plaintiffs and providing a mechanism for such notice, and gained the court's approval of

their proposed process.  As noted, 45 Plaintiffs have opted in, in addition to the nine named Plaintiffs.

On June 30, 2015, Defendant filed an unopposed motion to file the parties' settlement agreement under seal, or in the alternative, to redact the monetary amounts from the agreement and accompanying paperwork.  See Doc. 89.[2]  On July 28, 2015, I denied Defendant's motion to the extent it sought to file the settlement agreement under seal, but I allowed counsel to file the agreement and accompanying paperwork with the settlement amounts redacted.  Doc. 91.  On August 11, 2015, Plaintiffs filed an unopposed motion for approval of the settlement, redacting the settlement figures from all the accompanying paperwork, while providing me with an unredacted version.  Doc. 92.

## II.    DISCUSSION

### A.    Certification

Before considering the proposed settlement, I must complete the second stage of certification and determine whether Plaintiffs are similarly situated to certify the collective action.  See Singleton v. First Student Mgmt. LLC, Civ. No. 13-1744, 2014 WL 3865853, at *3 (D.N.J. Aug. 6, 2014) (certifying collective action for settlement absent specific argument on issue); Bredbenner, 2011 WL 1344745, at *17 (granting final certification prior to approving settlement of FLSA collective action).  As previously

---

[2]The case was originally assigned to the Honorable Harvey Bartle III, who referred the case to me for a settlement conference.  I held a conference on June 9, 2015, at which the parties came to a tentative agreement.  When Judge Bartle determined that a conflict had arisen, the case was reassigned to the Honorable Anita Brody, who referred the case to me for all further proceedings on the consent of the parties.  See Docs. 86, 87, 90.

discussed, in the second stage of the certification procedure, Plaintiffs bear the burden of proving that they are similarly situated.  In making this determination, the court must consider a number of factors, including but not limited to:  "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment."  Keller v. TD Bank, N.A., Civ. No. 12-5054, 2014 WL 5591033, at *8 (E.D. Pa. Nov. 4, 2014) (quoting Zavala, 691 F.3d at 536).  Additionally, "Plaintiffs may be found dissimilar based on the existence of individualized defenses."  Id.

Plaintiffs have not addressed this step in their motion, but the record establishes that they are similarly situated.  All of the Plaintiffs are current or former employees of Defendant, having worked for Defendant at some point between May 1, 2011 and October 1, 2013, who held the title of Senior Safety Consultant and who were paid on a commission basis only to solicit sales over the phone of interactive (2-way) home medical emergency monitoring to consumers across the country.  Doc. 16 ¶¶ 21, 23.  Although they allege differing amounts of owed wages and differing numbers of hours worked, all allege that when they worked more than 40 hours per week they were not paid overtime, and that they did not receive the statutory minimum wage rate of $7.25 per hour for the first 40 hours worked per week.  Id. ¶ 36-38.  Similarly, although the retail establishment exemption[3] might apply differently based on each Plaintiff's hours and

---

[3]The retail establishment exemption, which Defendant would assert if the case proceeded, provides:

compensation, the same analysis would be used to determine the applicability of the exemption.[4]  Thus, I do not find that the applicability of the exemption to some of the Plaintiffs' claims is a hindrance to the collective action.  The court is satisfied, for purposes of this settlement, that the original members of the lawsuit and the opt-in members of the FLSA collective action meet the requirement for FLSA collective action certification, and I will address the fairness of the proposed settlement.

    B.   Settlement

Congress enacted the FLSA "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce."  Adams v. Bayview Asset Mgmt., LLC., 11 F. Supp.2d 474, 476 (E.D. Pa. 2014) (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)).  Pursuant to the FLSA, a collective action "may be

---

    No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.  In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

    [4]Counsel have provided me an unredacted chart listing the dollar value of each Plaintiff's claim with and without the exemption.  Doc. 92 ¶ 5, Exh. A.

maintained . . . by any one or more employees for and in behalf of themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Considering the public interest in FLSA rights, employees have only two avenues for compromising an FLSA claim:  (1) a compromise supervised by the Department of Labor pursuant to section 216(c) or (2) a district court-approved compromise pursuant to section 216(b).  Adams, 11 F. Supp.2d at 476; Brumley v. Camin Cargo Control, Inc., Civ. Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012).  If the employee chooses the latter, the court "may enter a stipulated judgment after scrutinizing the settlement for fairness."  Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1235 (M.D. Fla. 2010) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)).  In addition to fairness to the litigants, the court must also consider the public interest in the FLSA rights.  "[A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy."  Dees, 706 F. Supp.2d at 1233 (quoting Brooklyn Sav. Bank, 324 U.S. at 705).  Thus, courts have declined to approve FLSA settlements where the compromise thwarts the underlying legislative policy.

Before analyzing the fairness of the compromise, the court must first determine if the settlement resolves a bone fide dispute.  See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982).  The key in this analysis is to ensure that the parties are not "'negotiating around the clear FLSA requirements' via settlement."  Bredbenner v. Liberty Travel, Inc., Civ. Nos. 09-905, 09-124, 09-4587, 2011 WL 134475, at *18 (D.N.J. Apr. 8, 2011) (quoting Collins v. Sanderson Farms, Inc., 568 F.

6

Supp.2d 714, 720 (E.D. La. 2008)).  Clearly, this agreement resolves a bone fide dispute.

Plaintiffs alleged that they did not receive minimum wage for the first 40 hours worked in

a week and did not receive proper overtime compensation, and they acknowledge that

Defendant raised "valid defenses" including whether Plaintiffs were independent

contractors and whether Defendant was entitled to the retail establishment exception, in

addition to disputing certain alleged numbers of hours worked.  See Doc. 92 ¶ 6.  "A

disagreement over 'hours worked or compensation due' clearly establishes a bona fide

dispute."  Bredbenner, 2011 WL 134475, at *18 (quoting Hohnke v. United States, 69

Fed. C. 170, 175 (Fed. Cl. 2005)).  Prior to the filing of the suit, the allegedly illegal

compensation practice had been replaced.  See Doc. 92 ¶ 33.  Thus, Plaintiffs are not

compromising their FLSA rights prospectively and the proposed settlement resolves the

dispute for underpayment prior to the change in compensation practice.

    In evaluating the FLSA compromise itself, the court scrutinizes the agreement in

two steps.

> First, the court should consider whether the compromise is fair
> and reasonable to the employee (factors 'internal' to the
> compromise).  If the compromise is reasonable to the
> employee the court should inquire whether the compromise
> otherwise impermissibly frustrates implementation of the
> FLSA (factors 'external' to the compromise).  The court
> should approve the compromise only if the compromise is
> reasonable to the employee and furthers implementation of the
> FLSA in the workplace.

Brumley, 2012 WL 1019337, at *4 (quoting Dees, 706 F. Supp.2d at 124).

7

1.      Fairness – Internal Factors

In evaluating the fairness of a settlement in an FLSA collective action, the courts in the Third Circuit have utilized the standards set forth in Girsh v. Jepson, 521 F.2d 153, 157-58 (3d Cir. 1975), in which the court approved a Rule 23 class action settlement. See Brumley, 2012 WL 1019337, at *4-5 (utilizing Girsh factors to evaluate fairness of FLSA collective action settlement); In re Chickie's & Pete's Wage & Hour Litig., Civ. No. 12-6820, 2014 WL 911718, at *2-3 (E.D. Pa. Mar. 7, 2014) (same); Brown v. TrueBlue, Inc., Civ. No. 10-514, 2013 WL 5408575, at *1-2 (M.D. Pa. Sept. 25, 2013) (same); Bredbenner, 2011 WL 1344745, at *11 (same).  Thus, the court should consider

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Brumley, 2012 WL 1019337, at *4-5 (quoting Girsh, 521 F.2d at 157).

Guided by the Girsh factors, I conclude that the settlement is fair to the employees and a reasonable compromise of their claims at this stage of the litigation.  The settlement was reached after arm's-length negotiations concerning disputed claims and defenses respecting 54 Plaintiffs.  It provides payment for all unpaid minimum wages using a ceiling of 55 hours worked per week, and provides 25% of all unpaid overtime using the

same 55 hour ceiling. <u>See</u> Doc. 92 ¶¶ 13-14.[5] Although some discovery was completed beyond the pre-certification discovery, the parties came to agreement relatively early in what could have been a protracted and expensive process. Counsel for both sides have worked together to streamline both the litigation and settlement process.[6]

The courts of this circuit have approved incentive payments. <u>See</u> <u>Lenahan v. Sears, Roebuck and Co.</u>, Civ. No. 02-0045, 2006 WL 2085282, at *1, 8 n.7 (D.N.J. July 24, 2006); <u>Meijer, Inc. v. 3M</u>, Civ. No. 04-5871, Doc. 113 at 45-46 (E.D. Pa. Aug. 14, 2006); <u>Tenuto v. Transworld Sys. Inc.</u>, Civ. No. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002). Such payments are common in class action lawsuits involving a common fund. <u>Bredbenner</u>, 2011 WL 1344745, at *22-23 (citing <u>Cullen v. Whitman Med. Corp.</u>, 197 F.R.D. 136, 145 (E.D. Pa. 1990)); <u>Meijer</u>, Civ. No. 04-5871, Doc. 113, at 45.

The settlement calls for incentive payments to the named Plaintiffs of approximately 6.3% of the gross settlement. <u>See</u> Doc. 92 ¶ 15. The proposed breakdown awards the lead Plaintiff 6.5 times as much as the other eight named Plaintiffs, on the

---

[5]Counsel have provided me an unredacted itemization of each Plaintiff's settlement distribution. Doc. 92 Exh. A to Exh. B. Counsel also represent that the proposed distribution of settlement funds "takes account of Defendant's Section 7(i) defense [the retail establishment exemption] to those claims for overtime wages." Doc. 92 ¶ 12. It is not clear how this defense was used in the calculation as there does not appear to be an across-the-board ratio applied to each Plaintiff's claimed wage loss to calculate the settlement distribution.

[6]According to the Plaintiffs' Motion, all of the named Plaintiffs have approved the settlement distribution. Doc. 92 ¶ 25. Based on the information provided to the court, I am not in a position to determine Defendant's ability to withstand a greater judgment, but do not find this to be a barrier to approval of the settlement.
.

grounds that the lead Plaintiff "has driven the litigation from the start," making the first allegation that Defendant violated the FLSA, and has been involved in the litigation by locating witnesses and documents, participating in the settlement negotiations and the settlement conference.  See id. ¶16.  Likewise, the other named Plaintiffs have provided documents and information and named witnesses in anticipation of responses to written discovery requests.  See id. ¶ 19.  Moreover, counsel justify the incentive payments noting that each of the named Plaintiffs risks potential retaliation by future employers. Such factors support the incentive payments provided for in the agreement.  See In re Janney Montgomery Scott LLC Fin. Consultant Litig., Civ. No. 06-3202, Doc. 106 at 21-22.  Thus, I find that the incentive payments contained in the settlement agreement are reasonable.

  With respect to attorneys' fees, the Third Circuit has held that the court must consider ten factors in determining the reasonableness of attorney's fees in a common fund case:  (1) size of the fund and number of plaintiffs, (2) presence or absence of substantial objections by members of the class, (3) skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) risk of nonpayment, (6) amount of time devoted to the case by Plaintiffs' counsel, (7) awards in similar cases, (8) value of benefits attributable to the efforts of class counsel versus other groups, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement, and (10) any innovative terms of settlement.  Brumley, 2012 WL 1019337, at *3 (citing In re Diet Drugs, 582 F.3d 524, 541 (3d Cir. 2009)).

Here, there is a total settlement figure with 54 named and opt-in Plaintiffs, none of whom object to the attorneys' fees in the case.[7]  Plaintiffs' counsel seeks an amount representing 38.26% of the total settlement amount, less than the 40% contingent fee they had agreed to at the outset of the litigation, in addition to being reimbursed costs representing less than .52% of the total settlement amount.  See Doc. 92 ¶ 20-23.  Counsel conducted discovery and settlement discussions expeditiously, working together with defense counsel to streamline the discovery, certification, and settlement processes.  Although the named Plaintiffs were helpful in obtaining documentation, there is no evidence that any outside group played any part in championing the litigation.  Thus, counsel's efforts resulted in the settlement fund.

Compared to similar cases, counsel's fee appears reasonable.

> As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases.  The inverse relationship is predicated on the belief that increases in recovery are usually a result of the size of the class and not a result of the efforts of counsel.

Bredbenner, 2011 WL 1344745, at *19 (citations omitted).  Like Bredbenner, the common fund in this case would be not be considered a "mega-fund," favoring a larger rather than smaller percentage of the fund.

In Brumley, the Honorable Jose Linares of our neighboring District Court stated that "[t]he Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund" in common fund cases, and then cited several cases in which awards

---

[7]Counsel have represented to the court that the named Plaintiffs do not object to the fee and the opt-in Plaintiffs have agreed to be bound by the named Plaintiffs.  Doc. 92 ¶ 21.

in the range of one-third were awarded.  2012 WL 1019337, at *12 (citing <u>Bredbenner</u>,

2011 WL 1344745 (approving award of 32.6%); <u>Gilliam v. Addicts Rehab. Ctr. Fund</u>,

Civ. No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) (approving award of one –

third of settlement fund); <u>deMunecas v. Bold Food, LLC</u>, Civ. No. 09-440, 2010 WL

3322580 (S.D.N.Y. Aug. 23, 2010) (same); <u>Rotuna v. West Customer Mgmt. Grp., LLC</u>,

Civ. No. 09-1608, 2010 US Dist. LEXIS 58913, at *19 (N.D. Ohio Mar. 8, 2010)).[8]  For

all these reasons, I find that counsel's fee as set forth in the settlement agreement is

reasonable.

        2.      Fairness – External Factors

        Finally, in considering the fairness of the compromise, the court must consider

whether the agreement frustrates implementation of the FLSA.  Here, Defendant

discontinued the allegedly illegal compensation practice prior to the suit's filing and all

of the affected employees received notice of the suit.  In addition, Plaintiffs' counsel has

stated that there do not appear to be any other instances of non-compliance with the

FLSA by Defendant.  Although the agreement contains a confidentiality provision, which

ordinarily could thwart the purposes of the FLSA, considering the circumstances of the

---

[8]Counsel has not provided a breakdown of the hours spent on the litigation but notes that "[c]ontingent fees based upon an agreed upon percentage of the recovery are often approved in actions generating a common fund where the damages sustained by each individual Plaintiff are modest such that an attorney would otherwise have little incentive to take on an individual's case."  Doc. 92 ¶ 29 (citing <u>Williams v. Aramark Sports, LLC</u>, Civ. Nos. 10-1044, 10-1547, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011); <u>Morris v. Affinity Health Plan, Inc.</u>, Civ. No. 09-1932, 2011 WL 6288035 (S.D.N.Y. 2011); <u>Johnson v. Brennan</u>, Civ. No. 10-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)).

case and the settlement, I conclude that the settlement, including the confidentiality

provision, do not undermine the FLSA's purposes.

      As previously discussed, the underlying goal of the FLSA it to "protect all covered

workers from substandard wages and oppressive working hours."  Barrentine v.

Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a).

Several courts have found that a confidentiality provision in an FLSA settlement

agreement or sealing the settlement agreement undermines the purpose of the FLSA by

squelching the flow of information to other employees regarding an employer's violation

of the compensation provisions of the FLSA.

> Sealing an FLSA settlement agreement between an employer
> and employee, reviewing the agreement *in camera*, or
> reviewing the agreement at a hearing without the agreement's
> appearing in the record (in any event precluding other
> employees' and the public's access to, and knowledge of, the
> agreement) thwarts Congress's intent both to advance
> employees' awareness of their FLSA rights and to ensure
> pervasive implementation of the FLSA in the workplace.

Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1245 (M.D. Fla. 2010); see also

Weismantle v. Jali, Civ. No. 13-1087, 2015 WL 1866190 (W.D. Pa. Apr. 23, 2015)

(denying motion to seal FLSA settlement agreement); Adams v. Bayview Asset Mgmt.,

LLC, 11 F. Supp.3d 474, 476 (E.D. Pa. 2014) (denying request to review in camera and

seal FLSA settlement agreement); Brumley, 2012 WL 1019337, at 2-3, 7-8 ("compelled

silence unreasonably frustrates implementation of the 'public-private' rights granted by

the FLSA and thwarts Congress's intent to ensure widespread compliance with the

statute'); Brown v. TrueBlue, Inc., Civ. No. 10-514, 2013 WL 5408575, at *3 (finding

confidentiality provision of settlement agreement frustrates the implementation of the

FLSA); Cuttic v. Crozer-Chester Med. Ctr., 869 F. Supp.2d 464 (E.D. Pa. 2012) (refusing

to review FLSA settlement agreement in camera).[9]

However, the Honorable R. Barclay Surrick found that a settlement agreement

with a limited confidentiality provision did not frustrate the purposes of the FLSA.  In In

re Chickie's & Pete's Wage & Hour Litigation, the settlement agreement contained a

provision prohibiting Plaintiffs from disparaging the employer or "discussing the

substance and negotiations of this matter with the press and media."  2014 WL 911718, at

*3.  Judge Surrick concluded that "[s]uch a prohibition does not 'thwart the informational

objective of the [FLSA's] notice requirement by silencing the employee who has

vindicated a disputed FLSA right."  Id. (quoting Brumley, 2012 WL 1019337, at *7).

Although the settlement agreement in this case contains a confidentiality provision

requiring any Plaintiff who "publicize[s] or disclose[s] the terms of [the] Agreement or

the negotiations" to disgorge 40% of his or her settlement, see Doc. 92 at 30-31 (ECF

pagination), Defendant's allegedly illegal compensation practices are not hidden from

public view.  The settlement agreement is not sealed.  All of the potential Plaintiffs

received notice of the lawsuit and the redacted settlement agreement will be a public

record in the court.  Although the public will not have access to the exact settlement

figures, the motion for approval contains the mathematical formula that was used to

determine the settlement figures, albeit it does not detail exactly how the asserted retail

[9]As previously mentioned, I denied Defendant's request to file the settlement
agreement and accompanying paperwork under seal, while allowing the filing with
redaction of the settlement figures.  Doc. 91.

14

exemption impacts the calculation.  <u>See</u> Doc. 92 ¶¶ 13-14.  Any affected employee can calculate the potential value of his or her FLSA rights as represented by this settlement. Under these circumstances, I find that the agreement does not frustrate implementation of the FLSA.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW LOVETT, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CONNECT AMERICA.COM t/a CONNECTAMERICA | : | NO.  14-2596 |

## **O R D E R**

AND NOW, this 11th  day of September, 2015, upon consideration of Plaintiffs'
Unopposed Motion for Approval of Fair Labor Standards Act Collective Action
Settlement, and all documents submitted in support thereof, IT IS HEREBY ORDERED
that the Motion is GRANTED.  The court GRANTS final certification of the collective
action and APPROVES the Settlement Agreement and Release of Claims.  The action is
DISMISSED WITH PREJUDICE.

BY THE COURT:

/s/ELIZABETH T. HEY

_____
ELIZABETH T. HEY, U.S.M.J.